UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ANGELA SUE DAVIS                         CIVIL ACTION

VERSUS                                   NO. 13-65-BAJ-RLB

MICHAEL ASTRUE,
COMMISSIONER OF THE
SOCIAL SECURITY
ADMINISRATION

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on August 11, 2014.

                                                   RICHARD L. BOURGEOIS, JR.
                                                   UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ANGELA SUE DAVIS                                          CIVIL ACTION

VERSUS                                                    NO. 13-65-BAJ-RLB

MICHAEL ASTRUE,
COMMISSIONER OF THE
SOCIAL SECURITY
ADMINISRATION

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Angela Sue Davis ("Plaintiff"), seeks judicial review of final decisions of the Commissioner of the Social Security Administration (the "Commissioner") pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II and Supplemental Security Income (SSI) under Title XVI of the Social Security Act. (Tr. 96-106).[1] For the reasons assigned below, the Court recommends the decision of the Commissioner be **AFFIRMED** and Plaintiff's appeal **DISMISSED with prejudice**.

## I.    PROCEDURAL HISTORY

On August 28, 2009, Plaintiff filed applications for DIB (Tr. 192-93) and SSI (Tr. 196-198). Plaintiff alleged a disability onset date of October 1, 2000. (Tr. 192, 196). Plaintiff's applications were initially denied on February 25, 2010, because the Commissioner found Plaintiff was not disabled as of the alleged onset date. (Tr. 96-106). The denial of Plaintiff's application for SSI stated that although the Plaintiff is "depressed at times" she is able to care for her personal needs and to understand and follow instructions. (Tr. 103). Plaintiff then filed a

---

[1] References to documents filed in this case are designated by "(R. Doc. [docket entry number(s)] at [page number(s)])". Reference to the record of administrative proceedings filed in this case is designated by "(Tr. [page number(s)])".

timely request for a hearing before an Administrative Law Judge ("ALJ") on March 23, 2010. (Tr. 109-111).

On February 15, 2011, and again on May 23, 2011, the ALJ held a hearing in which Plaintiff, represented by counsel, appeared and testified. (Tr. 59-95). A vocational expert (VE), Thomas Mungell, also testified at the hearing. (Tr. 88-94). Through the ALJ, the Commissioner rendered an unfavorable decision regarding Plaintiff's claims for disability insurance benefits and SSI on July 25, 2011. (Tr. 33-58). For the purpose of Plaintiff's claim for disability insurance benefits, the ALJ found that Plaintiff had not been under a disability from the alleged amended onset date of January 9, 2006 through March 31, 2006, the date Plaintiff was last insured. (Tr. 51). For the purpose of Plaintiff's claim for SSI, the ALJ found that Plaintiff had not been under a disability from the date of Plaintiff's application on August 28, 2009 through July 25, 2011, the date of the ALJ's decision. (Tr. 51). Plaintiff's request for review was denied by the Appeals Council on November 30, 2012. (Tr. 1-5). The ALJ's decision rested as the final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . ."). The ALJ's final decision is now ripe for review under 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It

means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g.*, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III. ALJ'S DETERMINATION

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). At step three the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

In his decision, the ALJ first found that Plaintiff met the insured status requirements of the Social Security Act through March 30, 2006 and had not engaged in substantial gainful

4

activity since the amended onset date of January 9, 2006. (Tr. 38). At step two, the ALJ determined, for the purpose of Plaintiff's SSI claim, that she has the following severe mental impairments: "a depressive disorder, a somatoform disorder and a personality disorder with histrionic and somatic features."[2] (Tr. 39). At step three, the ALJ concluded Plaintiff did not meet any of the "listed impairments" contained in the Regulations. (Tr. 39). The ALJ then found that, for the period beginning August 2009, the Plaintiff "has had the residual functional capacity to perform a wide range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)." (Tr. 44). More specifically, the ALJ concluded that Plaintiff "is able to lift and carry ten pounds occasionally and five pounds frequently, stand and walk two hours in a workday and sit six hours in a workday, with the ability to push and pull limited by the weight she is able to life and carry; she is able to perform no overhead work and no complex work." (Tr. 44). At step four, the ALJ concluded that Plaintiff is unable to perform any past relevant work, and that the transferability of job skills is not an issue. (Tr. 50). At step five, the ALJ found that, after considering Plaintiff's age, education, work experience, and residual functional capacity, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 50). Ultimately, the ALJ determined Plaintiff "was not under a disability, as defined by the Social

---

[2] The ALJ also determined that the Plaintiff suffered from the following severe physical impairments: "degenerative disc disease of the cervical and lumbar spines, status post fusion at C5-6, C6-7, and L5-S1, fibromyalgia, carpal tunnel syndrome." (Tr. 39). In her Complaint, Plaintiff alleged that the ALJ committed reversible legal errors pertaining to his findings related to Plaintiff's physical impairments, and stated that she intended to submit that new and material evidence in the form of medical records and a statement from Thomas Shelton, Ph.D., her previous employer. (R. Doc. 1 at 2-3) (*See* Tr. 289). The Plaintiff has abandoned these allegations and has not submitted any facts or arguments that the ALJ committed any reversible legal error in his findings regarding Plaintiff's severe physical impairments. (R. Doc. 11 at 2) ("The claimant does not contest the ALJ's findings regarding her physical restrictions."). Furthermore, the ALJ noted at step two that since the Plaintiff developed her "mental impairments since the expiration of her insured status," Plaintiff's mental impairments are only relevant to her SSI claim and not her DIB claim. Plaintiff purports to challenge both the ALJ's determination with regard to her DIB claim and SSI claim. (R. Doc. 11 at 1-2). Because Plaintiff is not challenging the ALJ's physical impairment determination, and the ALJ's mental impairment determination has no bearing on the ALJ's decision with regard to the Plaintiff's DIB claim, the Plaintiff has not raised any relevant grounds for challenging the ALJ's decision with regard to her DIB claim.

5

Security Act, any time from the beginning of her alleged onset date of January 9, 2006 through the date she was last insured on March 31, 2006 or from her application date of August 28, 2009 through the date of the ALJ's decision on July 25, 2011. (Tr. 51).

## IV. ASSIGNMENTS OF ERROR

Plaintiff alleges that the ALJ committed two errors. (R. Doc. 11). First, the "ALJ found that the claimant's ability to maintain concentration, persistence and pace are moderately limited; however, the residual functional capacity which the ALJ adopted failed to include any restriction in concentration, persistence or pace." (R. Doc. 11 at 5-6). Second, the "ALJ's failure to include the established restrictions in his RFC finding resulted in reliance on vocational testimony which does not carry the Commissioner's burden of proof at the final step in the sequential evaluation process." (R. Doc. 11 at 6-8).

## V. DISCUSSION

### A. Residual Functional Capacity

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). The ALJ's RFC decision can be supported by substantial evidence even if the ALJ does not specifically discuss all the evidence that supports his or her decision or all the evidence that he or she rejected. *Falco*, 27 F.3d at 163-64. A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The court "may only scrutinize the record" and take into account whatever fairly detracts from the substantiality of the evidence supporting the ALJ's decision. *Leggett*, 67 F.3d at 564. Accordingly, a "no substantial evidence" finding is

appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings to support the ALJ's decision. *Johnson*, 864 F.2d at 343-44.

For the purposes of Plaintiff's application for SSI payments, the ALJ assessed Plaintiff's RFC from August 2009 through July 2011. (Tr. 44-50). The ALJ concluded after "careful consideration of the entire record" that the Plaintiff "has had the residual functional capacity to perform a wide range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)" and, more specifically, that Plaintiff "is able to lift and carry ten pounds occasionally and five pounds frequently, stand and walk two hours in a workday and sit six hours in a workday, with the ability to push and pull limited by the weight she is able to life and carry; she is able to perform no overhead work and no complex work." (Tr. 44).[3]

Plaintiff argues that the ALJ's RFC determination resulted in reversible error because although the ALJ found the Plaintiff's "ability to maintain concentration, persistence and pace are moderately limited" for the purpose of the step 2 and step 3 analyses, he did not incorporate these limitations into the RFC determination. (R. Doc. 11 at 5-6). The ALJ's findings at step two and three, however, are not his RFC determination. (Tr. 42) ("The limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps two and three of the sequential evaluation process."). Plaintiff acknowledges this in his brief. (R. Doc. 11 at 5).

Nevertheless, Plaintiff argues that the ALJ's RFC determination is inconsistent with the ALJ's finding, based on the medical records of Dr. Levy, that the Plaintiff has "moderate difficulties in maintaining concentration, persistence or pace." (R. Doc. 11 at 5-6). More

---

[3] The only difference between this RFC determination for the purpose of Plaintiff's SSI benefits application, and the RFC determination for the purpose of Plaintiff's DIB application, is the inclusion of the limitation that Plaintiff cannot perform "complex work." (Tr. 42, 44). As discussed below, the ALJ added the limitation regarding "complex work" for the purpose of Plaintiff's SSI benefits claim because Plaintiff's severe mental impairments did not develop during Plaintiff's DIB coverage.

specifically, Plaintiff disagrees with the ALJ's conclusion that "a review of the evidence suggests that the claimant's stress flows from the pain and associated difficulty concentrating" and that an RFC limiting her "to non-complex work would provide for any difficulties the [Plaintiff] has with work related stress." (R. Doc. 11 at 6 (citing Tr. 49)). In short, Plaintiff claims that it was reversible error for the ALJ to conclude that an RFC determination restricting Plaintiff "from complex work adequately accounts for the [Plaintiff's] mental restriction." (R. Doc. 11 at 6).

The Court disagrees and finds that substantial evidence supports the ALJ's RFC determination, and that the ALJ's RFC determination is consistent with any finding at steps two and three that the Plaintiff has moderate difficulties in maintaining concentration, persistence or pace. The ALJ considered the objective medical record in detail in determining whether Plaintiff had a listed limitation. (Tr. 39-42). In particular, the ALJ discussed his specific consideration of "the requirements of listings 12.04, 12.07, and 12.08, which deal with affective disorders, somatoform disorders, and personality disorders, respectively." (Tr. 41). The ALJ considered whether the "paragraph B" criteria were satisfied, namely by determining whether Plaintiff had any "marked" or "extreme" limitations as opposed to "mild" or "moderate" limitations. (Tr. 41).

The ALJ concluded that Plaintiff "has a mild restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace, particularly for complex tasks; and no episodes of decompensation of extended duration." (Tr. 42). In reaching that conclusion, the ALJ reviewed and considered the opinions of Mark Zeilinski, M.D., Alan Taylor, Ph. D., Judith Levy, Ph.D., and the Plaintiff's own testimony at the May 2011 hearing. (Tr. 41-42). Plaintiff does not argue that this determination for the purpose of step two and step three was in error.

8

The ALJ conducted a separate analysis for the RFC determination with regard to Plaintiff's SSI benefits claims. (Tr. 44-50). A significant portion of the RFC determination concerns the Plaintiff's mental impairments and the degree to which those mental impairments affect her ability to work. (Tr. 48-50). In making his RFC determination, the ALJ considered the objective medical evidence and Plaintiff's testimony. (Tr. 48-50).

As discussed by the ALJ, the record reveals that in September 2008, the Plaintiff began seeking psychiatric treatment from Dr. Zeilinski. (Tr. 41, 48, 473-78). Dr. Zeilinski treated the Plaintiff from September 2008 through September 2009. (Tr. 473-78). At Plaintiff's initial visit, Dr. Zielinski diagnosed Plaintiff with attention deficient hyperactivity disorder (ADHD). (Tr. 41, 478). According to Dr. Zielinski notes, Plaintiff improved in a few months after being treated with medications. (Tr. 41, 48, 473-75). Dr. Zielinski provided no opinion regarding Plaintiff's ability to work. (Tr. 48, 473-78).

The record also reveals that on November 10, 2009, Dr. Taylor conducted a psychological evaluation of the Plaintiff. (Tr. 41, 49, 501-06). Dr. Taylor noted the Plaintiff's mood was euthymic (normal), her affect was appropriate, and that she did not display any significant difficulties with attention. (Tr. 41, 49, 504). Dr. Taylor described Plaintiff as alert and oriented, her conversion was clear and logical, and that she had adequate memory and attention. (Tr. 41, 49, 504). The Plaintiff was able to follow three-step directions at the consultation. (Tr. 41, 49, 504). The Plaintiff was able to spell "world" and "paint" correctly forward and backward, count to twenty by ones and twos, and count to thirty by threes, but was unable to perform serial sevens. (Tr. 41, 504). The Plaintiff reported to Dr. Taylor that she was able to perform domestic tasks and take care of her personal hygiene and finances. (Tr. 41, 504). The Plaintiff also reported to Dr. Taylor that she is capable of responding appropriately to

9

supervision and interacting appropriately with co-workers. (Tr. 41, 49, 504). Dr. Taylor noted that Plaintiff demonstrated no comprehension or communication difficulties. (Tr. 41, 49, 504).

Dr. Taylor also noted, however, that despite Plaintiff's demonstration of good concentration with certain tasks, she had difficulty with concentration and attention due to pain and her psychological symptoms. (Tr. 41, 49, 504). Finally, Dr. Taylor provided that Plaintiff's "ability to sustain a normal pace of work for a 40-hour work week would be dependent on her medical condition" and noted that Plaintiff seemed to be "experiencing some symptoms of depression and anxiety related to her pain complaints." (Tr. 504-05).

Dr. Taylor scored Plaintiff with a Global Assessment of Functioning (GAF) rating of 60. (Tr. 49, 505). A GAF rating between 51 and 60 indicates only "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders* 34 (DSM-IV) (Michael B. First, M.D., et al. eds., 4th ed. 2000).

The ALJ also discussed the December 30, 2009, opinion of Dr. Levy, a state agency psychological consultant who reviewed Plaintiff's medical file and performed a Psychiatric Review Technique and a Medical Residual Functional Capacity Assessment. (Tr. 41, 49, 517-35). In her assessment, Dr. Levy concluded, as recognized by the ALJ at steps two and three, that the Plaintiff has no restrictions of activities of daily living, mild difficulties in maintaining social functions; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration. (Tr. 41, 49, 532). Dr. Levy opined, however, that the Plaintiff "may be moderately limited with attn./concentration and pace due to her pain &

10

psychological symptoms." (Tr. 41, 49, 519). Dr. Taylor also opined that the Plaintiff appears capable of simple to moderately-complex work in low stress environments. (Tr. 41, 49, 519).

The ALJ also considered Plaintiff's testimony at the May 2011 hearing, which is mostly focused on Plaintiff's physical ailments but also provides insight into Plaintiff's ability to perform non-complex work. (Tr. 41, 49, 62-88) At the hearing, Plaintiff stated that her former husband did her grocery shopping, but she did some housework and laundry. (Tr. 41, 67-68). Plaintiff spends approximately twenty minutes each day online communicating with a nutritionist regarding her daughter's dietary needs. (Tr. 41, 69-70). Plaintiff also testified that she belonged to two social groups, a single mother's support group and a church group, and that she got along well with people. (Tr. 41, 72-73).[4]

Having independently considered the objective evidence regarding Plaintiff's severe mental impairments, the court must conclude that the ALJ's RFC determination is supported by substantial evidence. Based on the opinions in the record, as well as Plaintiff's own testimony, the ALJ concluded that restricting Plaintiff from "complex work" would account for Plaintiff's severe mental impairments. Contrary to Plaintiff's assertions (R. Doc. 11 at 6), the RFC limitation to non-complex work takes into account the Plaintiff's concentration and persistence. (*See* Tr. 517-18). As noted by the ALJ, Dr. Levy, after considering Plaintiff's mental treatment

---

[4] The Plaintiff also opined that her ADHD "has skyrocketed" and that she can't stay focused from one thing to the next. (Tr. 76). The ALJ concluded that after careful consideration of the evidence, the Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are credible only to the extent they are consistent with the objective medical evidence." (Tr. 50). The ALJ could disregard the Plaintiff's subjective symptomology to the extent it was inconsistent with the RFC under a proper exercise of his discretion as the finder of fact. *See Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). That no physician or other mental health source on the record states described Plaintiff as disabled or otherwise unable to work is further substantial evidence supporting the ALJ's conclusion that Plaintiff's subjective symptomology was not credible. *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995); *Harper v. Sullivan*, 887 F.2d 92, 97 (5th Cir.1989). The Plaintiff does not challenge this credibility determination.

11

records, concluded that Plaintiff is capable of "simple to moderately-complex work in low stress environments." (Tr. 41, 49, 519). Based in part on this opinion, the ALJ found that Plaintiff's "stress flows from her pain and associated difficulty concentration." (Tr. 49). The ALJ then concluded that "a limitation to non-complex work would provide for any difficulties the claimant has with work-related stress. (Tr. 49).

The Court finds no reversible error in the ALJ's RFC determination to the extent it considered Plaintiff's mental impairments.[5]

### B. The ALJ's Hypothetical to the VE Incorporated Plaintiff's Ability to Maintain Concentration, Persistence, and Pace

Plaintiff's second allegation of error is that the ALJ failed to accurately advise the VE of all of Plaintiff's restrictions, thereby resulting in vocational testimony that was insufficient to meet the Commissioner's burden of proof at step five. In *Bowling v. Shalala*, the Fifth Circuit articulated the test for determining when a defective hypothetical question to a vocational expert will produce reversible error:

> Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question), a determination of non-disability based on such a defective question cannot stand.

36 F.3d 431, 436 (5th Cir. 1994). The issue on review, therefore, is whether the ALJ reasonably incorporated all disabilities of the Plaintiff in his hypothetical questions posed to the ALJ, and whether the Plaintiff had an opportunity to correct any deficiencies in the ALJ's questioning.

---

[5] The Court has not reviewed whether the ALJ's RFC determinations based upon Plaintiff's physical impairments are supported by substantial evidence. Plaintiff has not challenged those determinations. (R. Doc. 11 at 2).

12

Plaintiff claims that the ALJ's hypotheticals posed to the VE did not incorporate the ALJ's findings at steps two and three regarding Plaintiff's ability to maintain concentration, persistence, and pace. (R. Doc. 11 at 6). Accordingly, Plaintiff argues that the VE was not made aware of all of the Plaintiff's limitations when she testified regarding whether the Plaintiff, who cannot return to past relevant work, can perform any other relevant work. (R. Doc. 11 at 7). Plaintiff ignores, however, that the ALJ's RFC determination for the purposes of the Plaintiff's SSI benefits claim considered the Plaintiff's mental limitations and incorporated into the RFC a limitation from complex work. As discussed above, the ALJ relied, in part, upon Dr. Levy's determination that Plaintiff's "moderate difficulties in maintaining concentration, persistence, or pace" was particularly heightened when she had to perform "complex tasks." (Tr. 519). The ALJ considered this evidence in limiting the Plaintiff's RFC to non-complex tasks. (Tr. 49).

Furthermore, the ALJ's findings at step two and three are not his RFC determination (Tr. 42) ("The limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps two and three of the sequential evaluation process."). The VE's response that she could perform work as a receptionist or information clerk supports the ALJ's step five conclusion. (Tr. 50-51, 90). Plaintiff's argument that the ALJ's evaluation at step three necessarily supports a decreased RFC determination is improper. *See Bordelon v. Atrue*, 281 F. App'x 418, 422 (5th Cir. 2008) (noting that district court properly explained that diagnosed impairments regarding limitations in concentration, persistence and pace are not equivalent to "functional limitations" on ability to work).

To the extent the Plaintiff's moderate difficulties with concentration, persistence or pace equate to functional limitations, the hypothetical to the VE adequately addressed those

13

limitations in his RFC by limiting her to non-complex work. The ALJ specifically concluded that "a review of the evidence suggests that the claimant's stress flows from the pain and associated difficulty concentrating" and that an RFC limiting her "to non-complex work would provide for any difficulties the [Plaintiff] has with work related stress." (Tr. 49). As discussed above, the Court has concluded that the ALJ's RFC determination is supported by substantial evidence.

The ALJ's hypothetical questions to the VE adequately reflected the limitation at issue in the RFC—Plaintiff's inability to perform complex work in light of her mental impairments. The ALJ specifically asked the VE to identify any jobs not requiring "complex work." (Tr. 90); *see also Bordelon*, 281 Fed. App'x at 422-23 (finding that ALJ's hypothetical adequately incorporated limitations regarding concentration, persistence and pace by specifying, among other things, ability to carry out simple instructions). The Fifth Circuit also noted in *Bordelon* that claimant "failed to show any prejudice arising from the hypothetical question's omission of her 'moderate' concentration, persistence, and pace limitations." *Id.* Likewise, no prejudice can be found here or has been shown by Plaintiff. Finally, Plaintiff's representative was afforded an opportunity to suggest any defects in the ALJ's question and did not suggest any inclusion regarding these limitations, such that the hypothetical was proper for that reason as well. *Id.* at 423 n.7 (hypothetical question was proper because Plaintiff was afforded opportunity to correct any deficiencies and chose not to). Plaintiff's representative did not ask any hypothetical questions regarding Plaintiff's ability to work in light of her "moderate" limitation for concentration, persistence, and pace. (Tr. 92-93).

The Court finds that the ALJ's RFC determination was supported by substantial evidence, the ALJ's hypothetical questions reasonably incorporated all disabilities recognized by

the ALJ, including the Plaintiff's "moderate" limitation for concentration, persistence, and pace, and Plaintiff's representative was afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical question. Accordingly, the Court finds there is no reversible error with regard to the ALJ's step 5 conclusion and reliance on the VE's testimony.

## VI. RECOMMENDATION

For the reasons assigned above, the Court **RECOMMENDS** the Commissioner's decision be **AFFIRMED** and Plaintiff's appeal **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on August 11, 2014.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**